IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL JOSEPH TYLER, | : | CIVIL ACTION NO. **1:CV-04-2345** |
| Petitioner | : | (Judge Conner) |
| v. | : | (Magistrate Judge Blewitt) |
| SUPERINTENDENT GILLIS, et al., | : | |
| Respondents | : | |

## **REPORT AND RECOMMENDATION**

**I. Background.**

On October 26, 2004, while incarcerated at the State Correctional Institution at Coal Township, Pennsylvania ("SCI-Coal Twp."), the Petitioner, Michael Joseph Tyler, filed, *pro se,* a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. 1). Petitioner is incarcerated as a result of 1991 convictions in the Philadelphia County Court of Common Pleas for unlawful restraint, criminal attempt involuntary deviate sexual intercourse and criminal attempt rape. (Doc. 2, p. I). Petitioner paid the requisite filing fee. (Doc. 5). Petitioner also filed a Memorandum in support of his Habeas Petition, as well as an Appendix of the Record. (Docs. 2 & 16). On December 23, 2004, Respondents filed their Answer to the Petition with attached exhibits and, on December 27, 2004, filed their Brief in support of their Answer, with attached exhibits. (Docs. 14 & 15).

Upon review of the filings of the parties, we recommended that, based on this Court's recent cases, the Petition should be stayed while Petitioner completed exhaustion with the state court of his *ex post facto* claims against the Pennsylvania Board of Probation and Parole (the Board)

regarding the denial of Petitioner's parole application by applying the 1996 amendments to the Pennsylvania Parole Act. (Doc. 17).   On April 29, 2005, the District Court adopted our Report and Recommendation and ordered that this case be stayed while Petitioner exhausted his claims in state court. (Doc. 18).

Subsequently, on September 27, 2005, Petitioner filed a Motion to Vacate the stay, indicating that he exhausted his available state court remedies, and on December 1, 2005, the District Court issued an Order lifting the stay and remanding this case to the undersigned. (Docs. 21 & 22). On December 19, 2005, we issued an Order directing the parties to file supplemental briefs in light of two recent Third Circuit Court cases on the issue of whether the 1996 Amendments to the Pennsylvania Parole Act violate the *Ex Post Facto* Clause, namely *Richardson v. PA Bd. of Probation and Parole*, 2005 WL 215505, 423F. 3d 282 (3d Cir. 2005); and *Parker v. Kelchner*, 2005 WL 2979229, 429 F. 3d 58  (3d Cir. 2005).  Specifically, we directed both parties to address the issue of whether the Petitioner could show individual disadvantage from the retroactive application of the 1996 Amendments.  (Doc. 23).

In compliance with our Order, both parties filed their Supplemental Briefs.  (Docs. 24 & 25). The Habeas Petition is now ripe for disposition.[1]

---

[1] In light of the recent Third Circuit cases, we primarily consider and address the supplemental briefs of the parties, especially since the earlier filings addressing the exhaustion issue are moot.

## II. State Procedural History.

As we detailed Petitioner's state procedural history in our prior Report and Recommendation (Doc. 17), we repeat it as follows:

> Petitioner states, and the record reveals, that he was arrested on August 1, 1990, and that he was convicted in April, 1991, of unlawful restraint, criminal attempt involuntary deviate sexual intercourse, and criminal attempt rape. (Doc. 2, p. 1, & Doc. 14, p. 1 & attached Castor Declaration, Att. 1). On April 16, 1991, Petitioner was sentenced to incarceration for a period of twelve and one-half (12 ½) to twenty-five (25) years. Petitioner's minimum sentence is February 1, 2003, and his maximum sentence is August 1, 2015. (Doc. 2, p. I & Doc. 14, p. 1).
>
> After serving over eleven (11) years of his sentence, on or about December 2, 2002, Petitioner had a parole hearing before the Board. The record reveals that the Board issued a decision on December 10, 2002, in which it stated, in part, that:
>
> Following an interview with you and a review of your file, and having considered all matters required pursuant to the Parole Act of 1941, as amended, 61 P.S. § 331.1 et seq., the Board of Probation and Parole, in the exercise of its discretion, has determined at this time that: your best interests do not justify or require you being paroled/reparoled; and, the interests of the Commonwealth will be injured if you were paroled/reparoled. Therefore, you are refused parole/reparole at this time.
>
> (Doc. 14, p. 2 & attached Castor Declaration, Att. 2).
>
> The Board also included detailed reasons for its decision. (*Id*.). Thus, Petitioner was denied parole and his case was ordered to be reviewed in or after June, 2003. (*Id*.). Petitioner reappeared before the Board on or about August 18, 2003, and it again denied Petitioner parole. (*Id*. at Att. 3). [FN2].
>
> The Board recorded a Notice of Board Decision on August 18, 2003, in which it set a new parole hearing in or after July, 2004.

> The Board, in its August 18, 2003, decision stated, in part, the following reasons for denying Petitioner parole:
>
> Following an interview with you and a review of your file, and having considered all matters required pursuant to the Parole Act of 1941, as amended, 61 P.S. § 331.1 et seq., the Board of Probation and Parole, in the exercise of its discretion, has determined at this time that: your best interests do not justify or require you being paroled/reparoled; and, the interests of the Commonwealth will be injured if you were paroled/reparoled. Therefore, you are refused parole/reparole at this time.

(*Id.* at Att. 3).

The Board also included detailed reasons for its decision. (*Id.*).

> On July 15, 2004, the Board issued its third decision in Petitioner's case. The Board, in its July 15, 2004, decision stated, in part, the following reasons for denying Petitioner parole:
>
> Following an interview with you and a review of your file, and having considered all matters required pursuant to the Parole Act of 1941, as amended, 61 P.S. § 331.1 et seq., the Board of Probation and Parole, in the exercise of its discretion, has determined at this time that: your best interests do not justify or require you being paroled/reparoled; and, the interests of the Commonwealth will be injured if you were paroled/reparoled. Therefore, you are refused parole/reparole at this time.

(*Id.* at Att. 4).

> The Board also included detailed reasons for its decision. (*Id.*). Thus, Petitioner was denied parole, and his case was ordered to be reviewed in or after December, 2005. (*Id.*).
>
> In all of the three stated decisions, the Board utilized the requirements of the 1996 amended Pa. Parole Act in denying Petitioner parole. There is no indication that Petitioner filed a Petition for Administrative Relief with the Board, requesting the Board to reconsider its stated decisions. However, it is undisputed that on August 9, 2004, the Petitioner filed a

4

Petition for Writ of Mandamus (Petition for Review) with the Pennsylvania Commonwealth Court, Docket No. 562 M.D. 2004, challenging the Board's July, 2004, decision denying him parole. (Doc. 2, p. I & Doc. 14, p. 5). The Petitioner stated that the 1996 amendments to the Parole Act made it more difficult for him to get a favorable parole decision and stated that he now needed more votes from the Board members to obtain parole than he needed before the 1996 amendments to the Act. (Doc. 16, Ex. B). Specifically, the Petitioner stated as follows in his Petition for Writ of Mandamus:

10. The Parole Act of August 6, 1941 was amended in 1996 for the purpose of making it SUBSTANTIALLY more difficult for those offenders classified as violent offenders to make parole, including the increase in number of affirmative votes necessary for the granting of parole: three (3) for violent offenders and five (5) votes for sex offenders (Petitioner).

11. Prior to the 1996 amendment, NO ONE needed to receive more than two (2) affirmative votes in order to be granted parole.

(*Id.*, p. 3, ¶'s 10.-11.).   The Petitioner concluded that:

13. In Mickens-Thomas v. Vaughn, 321 F.3d 374 (3d Cir. 2002) <u>cert. denied</u>, the United States Court of Appeals for the Third Circuit Court ruled that these amended statutes and the amendments to the Parole Act, applied retrospectively to persons arrested before their enactments, violates the Ex Post Facto Clause of the United States Constitution.

(*Id.*, p. 4, ¶ 13.).

  On October 15, 2004, the Pennsylvania Commonwealth Court issued an Order dismissing Petitioner's Petition for Review. (*Id.*, Ex. D). The Pennsylvania Commonwealth Court seemingly denied Petitioner's Petition for Review on the merits based upon well-settled Pennsylvania court precedent on *ex post facto* claims concerning the 1996 amendments to the Parole Act. (*Id.*).

  Subsequent to the Commonwealth Court's decision, the Petitioner filed the instant Habeas Corpus Petition with this Court

on October 26, 2004. (Doc. 1). Petitioner admits that he did not file an appeal of the Commonwealth Court's decision with the Pennsylvania Supreme Court as he could have. (Doc. 2, pp. I-II). *See* 42 Pa. C.S.A. §§ 723(a), 761(a). Petitioner claims that exhaustion of his state court remedies is futile, while Respondents argue that the instant Habeas Petition should be dismissed for the failure to exhaust. (Doc. 2, p. III & Doc. 15, pp. 6-9).

Petitioner avers that he filed this Petition for habeas relief with this Court, challenging the decisions of the Board as unconstitutional since the Board applied the 1996 parole amendments retroactively to his case for his 1990 arrest (1991 conviction). Thus, he claims that the Board violated the *ex post facto* clause. Petitioner appears to request this Court to direct the Board to conduct a new a parole hearing in which it applies the parole standards that existed before the 1996 amendments. (Doc. 1, p. 5, Grounds).[FN3].

Petitioner primarily contends that he is entitled to habeas relief due to the Board's application of 1996 amended parole standards which were not in effect at the time he was arrested in August, 1990 (Doc. 2, p. I), and at the time his crimes were committed (Doc. 1, p. 5) and which resulted in the Board's denials of his parole, in violation of due process, equal protection and the constitutional protection against *ex post facto* laws. (Doc. 2, p. V, Grounds One & Two). In essence, Petitioner claims, in fact, that his denials of parole violated the Constitution, since the 1996 parole standards and its requirement that sex offenders, such as Petitioner, must receive 5 affirmative votes for parole from the Board members instead of only 2 affirmative votes which were required prior to the 1996 amendments, were applied retroactively to his 1990 crimes. (*Id.*). Petitioner is also construed as claiming that the 1996 amendment to the Parole Act which called for consideration of the public safety above those of the inmate violated the *ex post facto* clause in light of *Mickens-Thomas*. Petitioner claims that by applying the 1996 amendments to the Parole Act, the Board made it more difficult for him to obtain release on parole than it would have been under the pre-1996 Act. Petitioner concludes that "the standards of making parole were changed by these amendments, and since they were retrospectively applied to the Petitioner, the Respondents violated the *ex post*

*facto* clause of the Constitution." (Doc. 2, p. 15).[FN4].

[FN2]  The Petitioner's Appendix, Exhibit A, Doc. 16, also contains copies of the the Board's decisions.

[FN3] Petitioner's present Petition was timely filed under the AEDPA statute of limitations period despite being filed well over one year after his 1991 judgment and conviction became final. The present petition was filed within one year of the date on which the factual predicate of the claim presented could have been discovered through the exercise of due diligence. *See* 28 U.S.C. § 2244(d)(1)(D). In this case, Petitioner filed his habeas petition on October 26, 2004, which was within one year of the Board's final July 15, 2004 decision challenged herein. The Petitioner's two prior parole decisions, December, 2002, and August, 2003, are thus not at issue.

[FN4]  As stated above, the Petitioner did raise these claims in his Petition for Review which he filed with the Pennsylvania Commonwealth Court. (Doc. 16, Ex. B, p. 3).

## III. Discussion.

*1. Exhaustion of State Court Remedies*

As discussed above, during the stay of this case, Petitioner applied to the Pennsylvania Supreme Court for relief, which was denied. This is undisputed. (Doc. 25, p. 2). Thus, as Respondents note (Doc. 25, p. 5, n. 2) and Petitioner states (Doc. 24, p. 3), we find that exhaustion is no longer an issue in this case.[2]

---

[2] Ordinarily, a state prisoner must exhaust his state court remedies before the federal courts consider the claims. 28 U.S.C. §2254(b); *Rose v. Lundy*, 455 U.S. 509, 515-16 (1982). As the Third Circuit recently stated:

> Exhaustion, however, is not a jurisdictional matter but a matter of comity. *See Story v. Kindt,* 26 F.3d 402, 405 (3d Cir. 1994). Federal courts need not defer to the state judicial process when there is no appropriate remedy at the state level or when the state process would frustrate the use of an available remedy. *Id.;*

Petitioner filed the present claims in a Petition for Review against the Board with the Pennsylvania Commonwealth Court. (Doc. 16, Ex. B). During the stay of the instant habeas case, it is undisputed that Petitioner appealed the Commonwealth Court's adverse decision to the Pennsylvania Supreme Court. Thus, the question of exhaustion of available state court remedies is now moot.

*2. Individual Disadvantage from Retroactive Application of the 1996 Amendments*

As the *Parker* Court noted, "the 1996 Amendments had changed the substantive criteria for parole in Pennsylvania and that a petitioner who could demonstrate individual disadvantage from retroactive application of the 1996 Amendments could prevail on an *ex post facto* claim." *Parker*, 429 F. 3d at 64, n. 5 (*citing Richardson* at *8). Petitioner recognizes that under *Richardson*

Thus, the 1996 Amendments to the Pennsylvania Parole Act are indeed a substantive change in the parole requirements for Pennsylvania inmates and "the 1996 amendment may be shown to violate the *ex post facto* clause if an inmate is able to demonstrate that the 1996 amendment, as applied to him, creates a significant risk of prolonging his incarceration." *Id*. (*Citing Cimaszewski v. Bd. of Probation and Parole*, 868 A. 2d 416, 427 (2005).

As Respondents state in their Supplemental Brief (Doc. 25, pp. 3-4), in its decisions of 2002, 2003, and 2004 denying Petitioner parole, the Board, relied in part, upon Petitioner's need to participate in and complete institutional programs including the two phases of the Sex Offender

---

28 U.S.C. § 2254(b)(1)(B).

*Lee v. Stickman*, 357 F. 3d 338, 341 (3d Cir. 2004). *See also O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999).

Program ("SOP").  (*See also* Doc. 14, Ex. A, att.  2, 3  & 4).  By the time of his 2004 parole review, Petitioner was enrolled in Phase II of the SOP but did not yet complete it.

Petitioner received his latest parole review in December 2005.  (Doc. 25, Ex. 1).  Petitioner was again denied parole by the Board for a myriad of reasons.  Specifically, the Board indicated as follows:

> The negative recommendation made by the Department of Corrections.
>
> Reports, evaluations and assessments concerning your mental and behavior condition and history that reflects ongoing risk to the community.
>
> Your need to participate in and complete additional institutional programs.
>
> You will be reviewed in or after April, 2007, or earlier, if recommended by the Department of Corrections/County Prison Staff.

(*Id.*).

The Board stated that at Petitioner's next parole review (April 2007), it will consider whether Petitioner  successfully completed a treatment program for sex offenders.  The Board also stated that it would consider the following additional factors:

> Whether you have received a favorable recommendation for parole from the Department of Corrections.
>
> Whether you have maintained a clear conduct record and completed the Department of Corrections prescriptive program(s).
>
> Your efforts to secure an approved home plan will be submitted to the Board at the time of review.
>
> Updated mental health and sex offender treatment program evaluations

to be available at time of review.

(*Id.*).

As this Court found in *Shaffer v, Meyers*, D.C. Civ. No. 03-829 (M.D. Pa.), inmate Shaffer was denied parole three times "not because a more stringent standard in evaluating parole has been applied in his case, but because of his repeated refusal to participate in a rehabilitative prison program." *See Shaffer v. Meyers*, C.A. No. 04-4120, slip op. p. 4 (3d Cir. 1-10-06), 2006 WL 45547 (Non-Precedential).[3]

The Third Circuit in *Shaffer* then found as follows:

> In setting forth his claim, Shaffer reads *Mickens-Thomas* too broadly, at times appearing to interpret that decision as holding that any retroactive application of the amended parole statute violates the *Ex Post Facto* Clause. However, Mickens-Thomas prevailed because he clearly satisfied both prongs. In his case, the Board had relied solely on public safety in denying parole and disregarded the parole guidelines, the unanimous recommendations of the Department of Corrections, and evidence of his rehabilitation. Moreover, Mickens-Thomas had presented convincing evidence that he had a significant likelihood of parole under the pre-1996 guidelines and had shown that all prisoner's (sic) in his situation (prisoners whose life sentences had been commuted before 1996) had been subsequently paroled. As we noted in *Richardson*, 423 F.3d at 293, "*Mickens-Thomas* may be an exceptional case because of the compelling nature of the evidence of prejudice."
>
> Although we do not require a petitioner to provide evidence which is compelling to the same degree, "our precedents require that a petitioner proffer at least <u>some</u> evidence of disadvantage to warrant habeas relief." *Id*. Shaffer has not done so. In deed, it is not even clear that

---

[3]Respondents attach a copy of the *Shaffer* decision to their Supplemental Brief, Doc. 25, Ex. B.

> he has met the first prong of the analysis, *i.e.*, shown that
> the Board used new standards, retroactively applied, in
> denying him parole.  *Prima facie* it does not seem likely
> that the criteria cited by the Board in Shaffer's case – participation
> in a treatment program for sex offenders, the recommendation
> of the Department of Corrections, Shaffer's conduct record
> and whether he completed any prescribed programs – would
> not have been considered by the Board pre-amendment,
> and Shaffer cites no evidence to persuade us otherwise.
> But even if we assume that the Board would have used
> different criteria pre-amendment, Shaffer has not provided
> adequate reasons to support the contention that application of
> those criteria would likely have resulted in his release
> on parole.

*Id*. Slip op. pp. 4-6.[4]

Similar to *Shaffer*, in our case, we find that the Board did not use new criteria from the 1996 amendments which it retroactively applied to our Petitioner to deny him parole from 2002 to 2005. In fact, the Board in our case used largely the same criteria that the Board used in inmate Shaffer's case, including participation and successful completion of a sex offenders treatment program, the recommendation of the DOC, the inmate's conduct record, and completion of prison programs. *Id*., Slip op. p. 5.  We agree with Respondents (Doc. 25, p. 5) that the record in our case shows, as it did in the *Shaffer* case, that the reasons for the Board's decisions denying our Petitioner parole were not based on new standards of parole from the 1996 amendments which were applied to our Petitioner's case; rather, they were legitimate reasons which the Board considered pre-1996

---

[4] Respondents' Supplemental Brief also details the *Richardson* test.  Doc. 25, p. 6.

amendments.[5]

We concur with Respondents that as in *Shaffer*, "Tyler has not provided sufficient evidence to meet either prong of the *ex post facto* test articulated in *Richardson*." (Doc. 25, p. 8). We also agree with Respondents' application of the *Richardson* test in Petitioner Tyler's case. Respondents state as follows:

> First, he has not shown that the criteria the Board of Probation and Parole has applied to his parole reviews in 2002 through 2005 is different than that which would have been considered prior to 1996. Indeed, just as in *Shaffer*, the Board's consideration of factors including participation in a treatment program for sex offenders, the recommendation of the Department of Corrections, Tyler's conduct record and whether he completed prescribed programs, mental health and behavior assessments, as well as the appropriateness of an approved home placement plan are factors which would likely have been considered as much prior to 1996 as they were in 2002 and after. Each of those factors is directly related to the values of rehabilitation and restoration to social and economic life as were the emphasis under the pre-1996 amendments.
>
> Second, Tyler has produced no evidence that *he* would have been paroled in a pre-1996 consideration. Instead, Tyler's supplemental brief attempts to meet his burden of demonstrating individual disadvantage from retroactive application of the 1996 Amendments to support his ex post facto claim by citing to the Board of Probation and Parole statistics of paroles granted during fiscal years 1990-91 through 2001-02. [Doc. 24, Ex. 1]. Those statistics show that parole rates fluctuated in the 72% to 77% range from 1990 to 1994, dropped to 64% in 1994-5, about 38% in

---

[5] We recognize that in *Shaffer*, the inmate refused to participate in the SOP and that inmate Tyler has participated in the SOP, but as of his December 2005 parole review had not yet completed it. Nonetheless, we find that as in *Shaffer*, Petitioner Tyler has not offered evidence to show that he has been disadvantaged from retroactive application of the 1996 amendments in his parole decision.

> 1995-96 and then began an assent (sic) to 52% in 2001-2. Tyler contends that the statistics show that the 1996 Amendments to the Parole Act disadvantaged him as a sexual and violent offender. [FN4]
>
> [FN4] While Tyler indicates that the percentages were of inmates paroled at their minimum, the statistics actually are the percentages of all parole applications considered, not just those at their minimum.

(Doc. 25, pp. 8-9).

Thus, applying the *Richardson* test in our case, we agree with Respondents (Doc. 25, p. 10) that Petitioner Tyler has not shown that the Board used any criteria other than what the Board considered pre-amendments.  Nor has Petitioner shown that the use of any 1996 amendments in his parole reviews has caused him disadvantage and has resulted in the denial of his parole.  In fact, as discussed, the Board in Tyler's case used most of the same criteria the Board used in Shaffer's case, and the Third Circuit found that Shaffer did not offer evidence of disadvantage to him.  The Third Circuit also found that it was not even clear if Shaffer established the first prong of the *Ricahrdson* test by showing that "the Board used new standards, retroactively applied, in denying him parole." *Shaffer, supra* at Slip op. p. 5.  The criteria used by the Board in both Shaffer's case and Tyler's case, which as stated are largely the same, as Respondents state (Doc. 25, p. 8), were considered by the Board even before the 1996 amendments.  *Id*.  Petitioner Tyler, like Petitioner Shaffer, has not shown any evidence to contradict this finding.  *Id*.  Thus, we do not find that Tyler has met the first prong of the *Richardson* test, let alone the second.  As Respondents point out (Doc. 25, p. 10), in the December 2005 decision of the Board, it indicated that at Petitioner's next review, it would consider whether Petitioner had successfully completed a SOP, received a

favorable recommendation from the DOC, maintained a clear conduct record with the DOC, and secured an approved home plan. (Doc. 25, Ex. 1). Therefore, even if our Petitioner did show that new 1996 amendment criteria were used by the Board to deny him parole, which we do not find that he has, as in *Shaffer*, Tyler "has not provided adequate reasons to support the contention that application of those criteria would likely have resulted in his release on parole." *Shaffer, supra*, slip op. P. 6.

We agree, for the reasons stated by Respondents (Doc. 25, pp. 9-10), that Petitioner's proffer of the Board's general parole statistics and parole rates (Doc. 24, Ex. 1) do not show that the 1996 Amendments were applied in his case to his disadvantage. There is no connection drawn by Petitioner between these general parole rates and the Board's parole decisions in his case. Also, as Respondents point out, our Petitioner was denied parole in 2002 through 2005, when the parole rates were higher. In any event, as Respondents assert (Doc. 25, p. 10), the fact remains that Petitioner Tyler has not even completed a sex offender treatment program as of his December 2005 parole review and that this, along with the need for DOC recommendation and an approved home plan, would have also been considered prior to the 1996 Amendments.[6]

---

[6]Petitioner is classified as a sex offender, which he states now requires five (5) votes for parole. However, under the pre-1996 Parole Act, Petitioner contends that only two (2) votes for parole were required. (Doc. 25, Ex. B, p. 3, ¶ 11.). Regardless of the number of parole votes Petitioner had to receive, he simply fails to recognize that he has not shown the factors which the Board relied upon in denying him parole, and particularly the need to complete the sex offender treatment program, were new factors as a result of the 1996 Amendments.

14

Therefore, based on *Shaffer*, we find that Petitioner Tyler's Habeas Corpus Petition should be denied.

**IV. Recommendation.**

Based on the foregoing, we respectfully recommend that Petitioner Tyler's Petition for Writ of Habeas Corpus be denied with respect to his *ex post facto* claims.

> **s/ Thomas M. Blewitt**
> **THOMAS M. BLEWITT**
> **United States Magistrate Judge**

**Dated: February 27, 2006**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL JOSEPH TYLER, | : | CIVIL ACTION NO. **1:CV-04-2345** |
| Petitioner | : | (Judge Conner) |
| v. | : | (Magistrate Judge Blewitt) |
| SUPERINTENDENT GILLIS, et al., | : | |
| Respondents | : | |

## **NOTICE**

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **February 27, 2006.**

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within ten (10) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

                                     s /Thomas M. Blewitt
                                     **THOMAS M. BLEWITT**
                                     **United States Magistrate Judge**

**Dated: February 27, 2006**